STATE of Missouri, DIVISION OF FAMILY SERVICES, and K.D., a Minor, by Next Friend, P.D., and P.D. Individually, (Plaintiffs) Respondents,

v.

J.H.T., (Defendant) Appellant.

No. 55663.

Missouri Court of Appeals, Eastern District, Division Three.

Aug. 1, 1989.

William E. Roussin, Roussin and Roach, St. Louis, for appellant.

Lynn Skaggs, Asst. Pros. Atty., Clayton, for respondents.

HAMILTON, Judge.

Appellant seeks to reverse the judgment of the trial court that determined he is the father of Respondent-minor child (hereinafter, K.D.) and that ordered him to pay child support in the amount of $40 per week. Appellant contends the trial court erred (1) in finding that he is the father of K.D.; (2) in finding that he had a duty to support K.D.; and (3) in ordering him to pay child support in the amount of $40 per week. We affirm in part, reverse in part, and remand.

In reviewing a court-tried case such as this, an appellate court must sustain the judgment of the trial court unless no substantial evidence supports it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Moreover, an appellate court should exercise its power to set aside the judgment in a court-tried case only with caution and a firm belief the judgment is wrong. *N.R. v. A.D.*, 691 S.W.2d 350, 352 (Mo.App.1985). Where evidence conflicts, the trial court possesses the prerogative to assess the credibility of witnesses, accepting or rejecting all, part, or none of the testimony. *Morgan v. Morgan*, 701 S.W.2d 177, 179 (Mo.App.1985); Rule 73.01(c)(2). With respect to the sufficiency of the evidence, an appellate court must accept as true the evidence and permissible inferences favorable to the trial court's judgment, disregarding contradictory evidence. *Morgan*, 701 S.W.2d at 179.

With these principles in mind, we consider the evidence adduced at trial. Respondent–Mother (hereinafter, Mother) testified she met Appellant in May, 1975, in Overland, Missouri. After several dates, they began living together in late June, 1975, in Overland. One week later, they moved to Sulphur Springs, Arkansas for approximately three weeks before proceeding to Noel, Missouri where they resided for two or three weeks. Throughout this period, the parties engaged in sexual intercourse. Mother denied engaging in sexual activity with either of the two men who owned the house where she and Appellant lived in Overland. She also denied she was seeing anyone other than Appellant at this time. Mother testified that, prior to June 1975, she last had sexual intercourse in 1973, giving birth to a daughter in June, 1974.

Mother believed she became pregnant at the end of June when she ran out of birth control pills. She experienced a regular monthly period in June but not in July, 1975. To determine if she were pregnant, Mother visited a clinic in Gravette, Arkansas with Appellant whom she had advised of her possible pregnancy. Appellant thereafter mentioned to his brother in Mother's presence that he had another child on the way. About the first of September, 1975, Appellant left Mother, having told her he did not want another child.

K.D., a daughter, was born on March 23, 1976, while Mother was unmarried. Mother stated that soon after the child's birth she told welfare authorities that Appellant was the father. No father is listed on the child's birth certificate. K.D. has remained in Mother's care and custody since birth. Appellant first saw K.D. in March, 1988, when the parties appeared at the Red Cross to undergo blood tests in connection with this litigation.

Mother and K.D. live with Mother's two other daughters in a two-story residence for which she makes monthly mortgage and insurance payments of $176.78. Heating bills range between $750 and $1200 each winter. Other utility bills plus car insurance total $60 monthly, and food costs average $250 each month for the four of them. Clothing for K.D. averages $25 per month, and her school supplies cost $25. Each month Mother receives $330 from A.F.D.C. and $255 in food stamps for the

family of four. Mother, who suffers from arthritis of the spine and asthma, has been on welfare for the past fourteen years, having been employed for a total of one year during that time.

Appellant testified he had no recollection of having had sexual relations with Mother, although he admitted they lived together in Overland for two weeks. He also denied knowledge of her pregnancy in 1975, or of the existence of K.D. until this litigation began.

Appellant was a roofer, last employed in February, 1987, when he ruptured two discs in his back while moving shingles. For this injury, he received temporary Workers' Compensation payments in the amount of $261.19 weekly until his employer unilaterally terminated them in June, 1988. His Workers' Compensation claim for permanent and total disability benefits is pending. Appellant testified he presently has no other source of income. His sole asset as disclosed by the evidence is a 1983 Ford Ranger which costs him $262 monthly for gas, oil, routine maintenance, and payments on the auto loan. Appellant owes $50 each month for rent and $306 monthly for court-ordered support for two children.

Initially, Appellant claims the trial court's finding and judgment that he is the father of K.D. is unsupported by the evidence and is against the weight of the evidence.

■ This court has previously held that "[i]n a paternity action involving a child born out of wedlock, the proponent must establish paternity by a preponderance of the evidence, unaided by the presumption of legitimacy afforded by marriage.... Obviously, the credibility of the mother who seeks to establish paternity is crucial in such a case." *N.R. v. A.D.*, 691 S.W.2d at 352. Mother testified that she and Appellant had sexual intercourse in late June, 1975, eight to nine months before the birth of K.D. A court may take judicial notice that, absent evidence to the contrary, the period of human gestation is 280 days. *T.A.L.S. v. R.D.B.*, 539 S.W.2d 737, 739 (Mo.App.1976). Therefore, conception of a child born in late March, 1976, would likely

have occurred in mid-June, 1975, a date that is consistent with Mother's belief she was pregnant in July and with her last normal period in early June, 1975, prior to pregnancy. Moreover, Mother denied sexual involvement with anyone other than Appellant at this time.

In addition, Mother's testimony that she told Appellant she was pregnant; that Appellant stated he wanted no more children; and that he informed his brother, in Mother's presence, that he had another child on the way evidenced Appellant's knowledge of his impending paternity.

In a court-tried case, the judgment of the trial court is presumed to be correct. *Prudential Property & Casualty Ins. Co. Inc. v. Cole*, 586 S.W.2d 433, 434 (Mo.App.1979). When we view the evidence and all reasonable inferences therefrom in the light most favorable to the judgment below and defer to the trial court's determination of credibility, we conclude Respondents have established paternity by a preponderance of the evidence. *See Lesh v. Lesh*, 718 S.W.2d 529, 532 (Mo.App.1986).

■ In point two, Appellant asserts that Mother's need for child support is unsupported by the evidence. We disagree. Each parent of a minor child has an obligation to support that child. *See*, Section 352.340 RSMo 1988. Thus, in the case at bar, while Mother is not required to establish a need for child support on her part, the evidence discloses that she has demonstrated such a need. Mother's monthly expenses for K.D., two other children, and herself totalled $486.78 for food, shelter, and necessities, excluding clothing and school expenses for the children and the cost of home heating in winter. K.D. required $25 each month for clothing and $25 for school supplies. Mother's monthly income was $635, including a monthly child support payment of $50 for her oldest daughter.

If the foregoing monthly expenses and income are pro-rated to determine the portion attributable to K.D., the need for additional child support is apparent. One quarter of the family expenses, excluding win-

ter heating costs, is $121.69. If $50 monthly for clothing and school supplies is added to the latter figure, K.D.'s monthly expenses total $171.69. One quarter of the monthly family income, including the child support payment for Mother's oldest daughter, is only $158.75. Point two is denied.

In point three, Appellant contends the award of child support in the amount of $40 per week was excessive and against the weight of the evidence. While recognizing a parent's responsibility for the support of a minor child, a trial court must also consider, *inter alia*, the financial resources and needs of each parent in determining an amount for child support. Section 452.340.1(2) RSMo Supp.1988.

The evidence before the trial court showed that, at the time of hearing, Appellant was an unemployed roofer with no income and a pending claim for permanent and total disability benefits under Workers' Compensation. His sole asset apparent from the record was a 1983 Ford Ranger on which he was obligated to make payments. Its fair market value was undisclosed. In addition, Appellant owed $50 monthly for rent and $306 monthly for court-ordered child support for two children. The record contains no evidence identifying Appellant's liabilities or the extent thereof; no evidence of Appellant's ability to work; and no evidence of Appellant's needs apart from rent, vehicle upkeep, and court-ordered child support.

In determining an amount of child support, courts should consider the present income of the father, his assets, his liabilities, and any other factors relevant to his ability to provide support. B_____ v. B_____, 673 S.W.2d 819, 823 (Mo.App. 1984). Where, as here, a non-custodial parent is unemployed, no evidence is presented as to his employment prospects, minimal evidence of his expenses is adduced, and no showing is made of his ability to meet those expenses, the award of child support lacks an evidentiary basis. *Bonskowski v. Bonskowski*, 700 S.W.2d 99, 101 (Mo.App. 1985). Accordingly, we reverse and remand the award of child support for further proceedings. The judgment in all other aspects is affirmed.

DOWD, P.J., and SIMON, J., concur.