Jennifer Lynne HOLMES, Respondent,

v.

Clifford Wayne HOLMES, Appellant.

No. 63496.

Missouri Court of Appeals, Eastern District, Division Four.

July 5, 1994.

---

Maia Brodie, Bryan L. Hettenbach, Clayton, for appellant.

Donald Lee Sanders, Springfield, for respondent.

CARL R. GAERTNER, Judge.

Clifford Wayne Holmes (husband) appeals from the decree of dissolution of his marriage to Jennifer Lynne Holmes, (wife) challenging the trial court's child support and maintenance awards, its failure to appoint a guardian ad litem to represent the parties' minor

children, and its division of marital property. We affirm as modified.

Husband and wife were married on November 6, 1975. The parties had a daughter and son during the marriage: Tiffany Lynne Holmes, born February 12, 1979, and Kerry Wayne Holmes, born November 29, 1980. The parties lived in the Springfield, Missouri, area until June 1990 when they moved to St. Louis County. They separated on March 2, 1991. On March 14, 1991, wife filed a petition for dissolution of marriage in which she sought primary physical custody of the children, child support, maintenance, an award of marital property and attorney's fees and costs. On March 28, 1991, husband filed his answer to the petition together with a cross-petition in which he sought joint custody of the children, an equitable division of the marital property and attorney's fees and costs.

A hearing on the merits was held on August 10, 1992. The evidence presented concerning the parties' occupations revealed that husband was employed as a construction worker when the parties lived in the Springfield area. Conflicting testimony was presented concerning husband's earnings.[1] Later, he worked part time at AT & T while he attended college. In May 1990, he graduated with a degree in accounting. Conflicting testimony was offered concerning whether husband had taken the Certified Public Accountant Exam.[2] In September 1990, husband obtained a job at an accounting firm. He was paid a $20,000 annual salary but was discharged in March 1991. He remained unemployed until he obtained an accounting job at Natoli Engineering in September 1991. He was paid an annual salary of $30,000 but was discharged on May 23, 1992. He testified that he had no explanation for why he was discharged. At the time of the hearing, husband was still unemployed and testified that he was having difficulty finding employment.

Wife has a high school education. However, she is a licensed insurance agent, and at the time of the hearing she had worked in the insurance field for 17 years. When the parties moved to St. Louis County, she obtained a job as manager of Meramec Valley Mutual Insurance Company. At the time of the hearing, she still worked for the company, earning $36,050 per year. However, after filing her dissolution petition, wife notified the company that she was resigning because she felt the job demanded too much of her time, there was no chance of advancement or increase in income, and she planned to move back to the Springfield area to live with her parents and enroll in college on a full-time basis to obtain a degree in business management. She had no employment prospects in Springfield but hoped to find a part-time job. Wife testified that she and husband had agreed that she would support the family while he obtained his college degree and then he would support the family while she obtained her degree.

Both parties filed financial statements with the court. Husband's statement revealed that he earned $200 per month in income from the hairstyling salon which he owned and that he had monthly expenses totaling $2,337. Wife's statement showed that she had a gross monthly income of $3,004.17 and monthly expenses totaling $3,118.77.

On January 22, 1993, the trial court entered its decree of dissolution. The court awarded wife legal and primary physical custody of the children and granted husband rights of temporary custody. Pursuant to Rule 88.01, the court made a Form 14 calculation of presumed child support based on imputed incomes of $1,000 per month for wife and $2,500 per month for husband. The court ordered husband to pay the presumed support amount of $275 per month per child.

The court awarded wife $100 per month in limited, nonmodifiable maintenance for a period of three years. The court also ordered the following division of marital property. Wife was awarded: 1) all personal property in her possession, including all bank ac-

---

1. Wife testified that husband made $30,000 to $35,000 per year as a construction worker but later admitted these figures included the sale of some cattle and a farm and that the figures did not reflect his actual payroll income.

2. Wife claimed he had taken the exam. Husband, however, testified that he planned to take the exam in the spring of 1993.

counts; 2) scuba gear, a refrigerator and computer equipment in husband's possession; 3) all of the parties' insurance policies; 4) $5,684.42 being held by the parties' insurance company in insurance proceeds for an automobile accident; and 5) $3,000, representing 50 percent of the proceeds from the sale of the parties' beauty salon, as additional maintenance. Husband was awarded: 1) all remaining personal property in his possession, including all checking accounts; and 2) the remaining $3,000 in proceeds from the sale of the beauty salon. Additionally, the court ordered wife to provide medical insurance coverage for the children. Husband was ordered to pay 75 percent of all uninsured, dental and orthodontic bills of the children and all marital debts. The court assessed costs against husband. This appeal followed.

Our review of the judgment in this court-tried case is governed by Rule 73.01(c) and the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We must affirm the judgment of the trial court unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32. In determining the sufficiency of the evidence, we will "accept as true the evidence and inferences from that evidence that are favorable to the trial court's decree and disregard all contrary evidence." *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989).

### I. Child Support

In his first point, husband claims the trial court erred in calculating his child support obligation. He argues the trial court abused its discretion by imputing too much income to him and too little income to wife without any evidentiary support.

■ The trial court has broad discretion in setting awards of child support. *Foster v. Foster*, 844 S.W.2d 559, 562 (Mo.App.1992). We will not substitute our judgment for that of the trial court absent a manifest abuse of discretion, and we will not disturb an award of child support unless the evidence is "palpably insufficient" to support it. *Hogrebe v. Hogrebe*, 727 S.W.2d 193, 195 (Mo.App.1987).

■ In order to prevent a spouse from escaping responsibilities to support minor children, a court may, in proper circumstances, impute an income to that spouse according to an amount he or she could earn by using his or her best efforts to gain employment suitable to his or her capabilities. *Jensen v. Jensen*, 877 S.W.2d 131, 136 (Mo.App.1994); *In re Marriage of Garrison*, 846 S.W.2d 771, 775–76 (Mo.App.1993); *Hogrebe*, 727 S.W.2d at 195. Generally, a court can impute a higher income to a spouse if the evidence indicates he or she has the capacity to earn more. *Luker v. Luker*, 861 S.W.2d 195, 199 (Mo.App.1993). This measure has been applied in a number of situations, including where a spouse has: 1) voluntarily reduced his or her income without justification, *Devries v. Devries*, 804 S.W.2d 825, 827 (Mo.App.1991); and 2) involuntarily lost a job but failed to use his or her best efforts to obtain a new job, *Garrison*, 846 S.W.2d at 776; *Hogrebe*, 727 S.W.2d at 196, refused to accept employment offers, *Luker*, 861 S.W.2d at 199, or failed to show that the unemployment was other than temporary. *Foster*, 844 S.W.2d at 562; *Stewart v. Stewart*, 866 S.W.2d 154, 157 (Mo.App.1993).

■ An award of child support must be supported by evidence of the parent's ability to pay. *Keck v. Keck*, 820 S.W.2d 727, 729 (Mo.App.1991); *State Div. of Family Services v. J.H.T.*, 777 S.W.2d 244, 247 (Mo.App. 1989). "Regardless of the form of the trial court's order of child support, there must be evidence in the record to support the order, consistent with Form 14." *Umphenour v. Umphenour*, 831 S.W.2d 764, 767 (Mo.App. 1992). Form 14 permits a court in determining a spouse's potential income to "consider employment potential and probable earnings level based on the parent's recent work history, occupational qualifications, [and] prevailing job opportunities in the community." Form No. 14 "Directions for Completion of Form 14"; *See also Garrison*, 846 S.W.2d at 774.

■ In the present case, the proper circumstances clearly exist for imputing income to husband to determine his support obligation. Furthermore, the evidence presented supports the amount of income the court

imputed to him. By failing to offer an explanation for his discharge, husband failed to sustain his burden of proving that his dismissal and subsequent decrease in income were involuntary. *See Forhan v. Forhan,* 693 S.W.2d 164, 166 (Mo.App.1985). The evidence indicates that husband has a college degree and some accounting experience and that he has a demonstrated earning capacity of $30,000 per year. Moreover, there was no evidence that his unemployment was not temporary. The court reasonably found that husband would be able to earn $30,000 if he were to put forth his best efforts to gain suitable employment and imputed this amount to him as income. *See Stewart,* 866 S.W.2d at 157; *Foster,* 844 S.W.2d at 562; *Riaz v. Riaz,* 789 S.W.2d 224, 228–29 (Mo. App.1990). This finding is supported by substantial evidence and is not an abuse of discretion.

■ Husband also objects to the imputation of $12,000 per year income to wife since she had been earning $36,000 a year prior to the separation. It is true that wife voluntarily reduced her income by resigning from her employment in St. Louis. However, contrary to husband, wife furnished an explanation and justification for this reduction in her income. She testified her present employment necessitated spending fifty to sixty hours per week away from home. It is not unreasonable for her to recognize the need to reduce her working hours in order to fulfill her obligations as a single parent with the custody of two young children. Nor is it unreasonable for a wife to return to the home of her parents in Springfield where she could find support and assistance in the task of raising the children. Her decision to work part-time and to seek further education is in accordance with the long standing agreement of the parties. The trial court did not abuse its discretion by accepting wife's explanation for her decreased income. *Anderson v. Anderson,* 854 S.W.2d 32, 37 (Mo.App.1993).

## II. Maintenance

■ In his second point, husband contends the trial court's award of $100 per month in periodic maintenance was an abuse of discretion, was unsupported by the evidence and was an erroneous application of § 452.335. Husband further claims the court erred in awarding wife $3,000 in proceeds from the sale of the parties' beauty salon as a lump-sum maintenance award because the proceeds were marital property.

■ The award of maintenance is a matter resting within the sole discretion of the trial court. *Switzer v. Switzer,* 821 S.W.2d 125, 126 (Mo.App.1992). On appeal, we limit our review of such an award to determine if the court has abused its discretion. *In re Marriage of Swofford,* 837 S.W.2d 560, 564 (Mo.App.1992).

Section 452.335 governs an award of maintenance. A court may grant maintenance only if it finds that the spouse seeking maintenance: 1) lacks sufficient property to provide for his or her reasonable needs; and 2) is unable to support himself or herself through appropriate employment. § 452.-335.1(1–2). Husband contends that wife's circumstances meet neither of these prerequisites because she left the marriage gainfully employed, free of debt, and with an award of most of the marital property.

Husband's argument, however, ignores the fact that wife provided the primary financial support for the family while husband obtained his degree and began his career as an accountant. The trial court obviously felt that wife should be reimbursed for her substantial contribution to husband's financial career pursuant to the agreement the parties reached regarding their careers and education.

Our courts have never attempted to set forth a particular procedure for recompensing a spouse who forfeits an opportunity for further education and works to enable the other spouse to obtain an education. *Scott v. Scott,* 645 S.W.2d 193, 197 (Mo.App.1982). Instead, the courts have recognized that a spouse's earning capacity and the other spouse's contribution toward it are matters to be considered in awarding maintenance. *Id.; In re Marriage of Studyvin,* 779 S.W.2d 338, 339–40 (Mo.App.1989); *In re Marriage of Tune,* 716 S.W.2d 899, 901–902 (Mo.App. 1986). A trial court has flexibility to fashion a dissolution decree to meet the variety of

circumstances presented by the case. *Scott,* 645 S.W.2d at 197.

Considering the sacrifices wife made to enable husband to obtain a degree, it is apparent that justice and equity demand that wife be able to obtain a college education with husband's financial support. Wife presented evidence which supports the award of periodic maintenance. There is no evidence that amount of the award is patently unwarranted or is wholly beyond the means of husband. *See, Lefever v. Lefever,* 840 S.W.2d 873, 875 (Mo.App.1992).

■ Husband further correctly argues that the trial court erroneously listed the award to wife of half of the proceeds from the sale of the parties' beauty salon as additional maintenance. The parties invested in the salon subsequent to their marriage and prior to their separation. Therefore, the proceeds from the sale of the salon are clearly marital property. § 452.330.3; *Absher v. Absher,* 841 S.W.2d 293, 294 (Mo.App.1992).

However, we are primarily concerned with the correctness of the result and not the route by which it is reached. *Jamison v. Jamison,* 828 S.W.2d 377, 378 (Mo.App.1992); *Walker v. Walker,* 631 S.W.2d 68, 71 (Mo. App.1982). If the result could have been reached by any reasonable theory, the judgment will be affirmed. *Walker,* 631 S.W.2d at 71. If the $3,000 is added to wife's other marital property, we cannot say that the distribution of marital property is unjust. Furthermore, it would not diminish wife's need for periodic maintenance.

Husband cites *Spicer v. Spicer,* 585 S.W.2d 126, 138–39 (Mo.App.1979), for the proposition that mislabeling marital property as maintenance warrants reversing the maintenance award. The correct interpretation of the holding in *Spicer,* however, provides that "awards of cash in lieu of marital property should not be made as awards of 'maintenance' where ... the evidence demonstrates no need for maintenance." *In re Marriage of Marks,* 625 S.W.2d 700, 702 (Mo.App. 1981). In the present case, the evidence shows a need for a maintenance award. Furthermore, it is obvious the trial court was attempting to divide the marital property in an equitable manner. Point denied.

Where no further factual adjudication is necessary, this court may render such a judgment as ought to be given pursuant to Rule 84.14. Accordingly, paragraph 9(e) of the dissolution decree is amended to read: "Petitioner shall receive in addition Three Thousand Dollars ($3,000.00), representing fifty percent (50%) of the proceeds of the sale of the Marshfield Missouri Beauty Shop."

### III. Guardian Ad Litem

■ In his third point, husband claims wife's testimony of his violent behavior constituted evidence of child abuse that required the trial court to appoint a guardian ad litem to represent the children.

Section 452.423.1 RSMo.Cum.Supp.1993 requires the appointment of a guardian ad litem in any dissolution of marriage case in which child abuse or neglect is alleged. The trial court's duty to appoint a guardian is activated by mere allegations of abuse or neglect, even if no request for the appointment of a guardian has been made by the parties. *Frazier v. Frazier,* 845 S.W.2d 130, 132 (Mo.App.1993); *Gilman v. Gilman,* 851 S.W.2d 15, 17 (Mo.App.1993). The term "abuse" is not defined in chapter 452. However, we are guided by the definition of the term in chapter 210, which governs child protection and reformation. *Osmun v. Osmun,* 842 S.W.2d 932, 935 (Mo.App.1992). As defined in that chapter, "abuse" means "any physical injury, sexual abuse, or emotional abuse inflicted on a child other than by accidental means by those responsible for his care, custody, and control except that discipline including spanking, administered in a reasonable manner shall not be construed to be abuse." § 210.110(1) RSMo.1986.

Although the parties did not allege child abuse in their pleadings, husband points to wife's testimony concerning three incidents involving the children. Wife testified that son attempted to intervene during an attack on wife by husband, husband pushed son, and son fell down a flight of two or three stairs to a landing. Wife also testified that daughter was hit in the head by a swinging door while husband chased her during an argument. She also testified that after the

separation husband hit daughter with a belt while she was visiting him.

Throughout wife's testimony, she described incidents of fighting between the two parties. The incident involving son occurred during one of these fights, and it appears from the record that husband's anger was directed toward wife, not son. The first incident with daughter in which she was hit with the door appears to have been an accident. The second incident involved husband disciplining her. There is no evidence this was administered in an unreasonable manner. Furthermore, "a parent may not protest the non-appointment of a guardian under § 452.423.1 on the basis that the parent's interests were harmed, when no harm to the child is shown." *Van Pelt v. Van Pelt*, 824 S.W.2d 135, 139 (Mo.App.1992). In this case, there has been no showing that the children were harmed. The record does not mandate appointment of a guardian ad litem. Point denied.

### IV. Marital Property

In his final point, husband claims the trial court erred in dividing the parties' marital property. Husband argues the division was not just under § 452.330 because "wife was allocated almost all of the marital property, whereas husband was allocated all of the parties' debt, with the net effect that the property division was 100%/0% in wife's favor."

The division of marital property is within the sound discretion of the trial court. *In re Marriage of Gourley*, 811 S.W.2d 13, 15 (Mo.App.1991). We must defer to the trial court's division unless it is improper under the principles of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), or an abuse of discretion is shown. *Gourley*, 811 S.W.2d at 15. We presume the correctness of the division of marital property; on appeal, the party challenging the division has the burden of overcoming the presumption. *Cofer v. Price–Cofer*, 825 S.W.2d 369, 374 (Mo.App.1992).

Under § 452.330.1, the trial court must make a "just" division of property after considering pertinent factors such as the contri-

bution of each spouse to the acquisition of the marital property, the value of the property set apart to each spouse, the economic circumstances of each spouse at the time of the division is to become effective, and the conduct of the parties during the course of the marriage. However, a "just" division need not be equal. *Mehra v. Mehra*, 819 S.W.2d 351, 357 (Mo.App.1991).

The parties owned no real property. The record indicates that wife was awarded insurance policies worth $2,974.70, insurance proceeds totaling $5,684.42, and $3,000, representing half of the proceeds from the sale of the parties' beauty shop. Husband was awarded the remaining $3,000 in proceeds from the sale of the beauty shop. Furthermore, the record indicates husband retained ownership of his carpenter's union retirement pension plan valued at approximately $13,000.

The court allocated the payment of all marital debt to husband. During the hearing, conflicting evidence was presented concerning the parties' total marital debt. In her financial statement, wife listed marital debts totaling $4,320. Husband's statement listed debts totaling $20,900. In husband's statement he included a $17,000 "contingent debt" incurred in a lawsuit commenced against the parties prior to the dissolution proceeding. The lawsuit concerned a business lease. Wife, however, testified that she paid $2,000 to be released from liability under the lease. Thus, it can no longer be considered a marital debt. Without the $17,000 debt, husband's statement shows only $3,900 in marital debt. Point denied.

Paragraph 9(e) of the judgment is amended to read: "Petitioner shall receive in addition Three Thousand Dollars ($3,000.00), representing fifty percent (50%) of the proceeds of the sale of the Marshfield Missouri Beauty Shop." The remainder of the court's judgment is affirmed.

GRIMM, P.J., and AHRENS, J., concur.