**In re the MARRIAGE OF Shawn LINDEMAN and Angela Lindeman.**

**Shawn Lindeman, Petitioner–Appellant,**

**and**

**Angela Lindeman, Respondent–Respondent.**

**No. 25886.**

Missouri Court of Appeals,
Southern District,
Division One.

July 30, 2004.

James R. Sharp, Sharp & Bredesen, Springfield, MO, for appellant.

Susan S. Jensen, Pratt, Fossard & Jensen, L.L.C., Springfield, MO, for respondent.

JAMES K. PREWITT, Judge.

Shawn Lindeman ["Husband"] appeals certain provisions of the judgment and decree dissolving his marriage to Angela Lindeman ["Wife"].

The parties were married in August, 1992, in Christian County, Missouri. One child was born to the marriage, Christian Seth, born July 8, 1996. On or about April 16, 2001, the couple separated. Husband left the marital home to reside in Battlefield, while Wife remained at the couple's home in Springfield with their son. Husband filed his petition for dissolution on May 21, 2001, in Greene County, Missouri. Wife counter-petitioned on June 14, 2001.

The matter went to trial on August 12, 2003. Pursuant to sanctions imposed for Husband's failure to produce and respond to discovery requests, Husband's pleadings were stricken and he was not allowed to testify. He was, however, allowed to cross-examine Wife, who was the only witness to testify at trial.

The trial court's final judgment and decree of dissolution was entered August 27, 2003. Joint legal custody of the couple's son was awarded to Wife and Husband, with Wife having "primary physical custody[.]" Among other provisions, Wife was awarded maintenance, child support and attorney fees. Husband appeals, presenting nine points relied on.

Husband's first point states:

The trial court erred in striking Husband's pleadings and not allowing him to testify or produce evidence at trial because said decision was an abuse of the trial court's discretion and a misapplication of the law, in that:

a. Husband's pleadings were struck for not adequately answering discovery requests but it is unclear from the record in what manner Husband's discovery requests were inadequate or how Wife was prejudiced by Husband's alleged inadequate responses, especially where Wife used documents produced by Husband concerning his income, expenses, retirement and investments as her exhibits at trial;

b. By not allowing Husband to testify, the trial court limited the information it received and limited the chances of it fashioning a "fair" decree with regard to property and debt division, child support, custody, and maintenance, thus abandoning its responsibilities under §§ 452.330, 452.335, 452.340, and 452.375 R.S.Mo. (2000); and

c. Husband was prejudiced by the trial court striking his pleading as he was unable to produce relevant evidence concerning the origins of the credit card debts he was required to pay by the court, that a portion of his Navy retirement benefits were earned before his marriage to Wife, problems regarding visitation with his child, why he withdrew certain funds from bank and retirement accounts after the separation of the parties, and whether he engaged in an "extramarital affair" prior to the separation of the parties, which were all subjects of the trial court's decree.

Husband further states that he "complied with the vast majority of Wife's discovery requests[.]" Wife contends that "Husband failed to answer thirteen interrogatories, not counting all subparts ... [and] seven requests for production of documents."

Husband's answers to Wife's interrogatories are not provided in the record before this Court. It is Husband's burden, as appellant, to provide a complete record that allows this Court to determine the questions presented on appeal. *Shields v. Shields,* 59 S.W.3d 658, 661 (Mo.App.2001). Without Husband's answers to Wife's interrogatories before us, it is difficult to determine if Husband complied with the rules on answering interrogatories.

■ "Provisions in a divorce decree will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *Allen v. Allen,* 927 S.W.2d 881, 885 (Mo.App.1996). The burden of demonstrating error is on the party challenging the decree. *Id.*

Wife filed and served on Husband her First Set of Interrogatories and First Request for Production of Documents on June 14, 2001. Wife's attorney notified Husband's attorney on July 23, 2001, that said discovery was overdue and requested responses within ten days. On August 17, 2001, Wife filed a Motion to Compel Responses to Interrogatories and Request for Production of Documents, and a hearing was set for August 23, 2001. Pursuant to an agreement between parties' attorneys, the trial court sustained Wife's motion to compel, and Husband was allowed an additional ten days to respond.

Wife filed a Second Motion to Compel Responses to Interrogatories and Request for Production of Documents on September 27, 2001, and a hearing was set for

October 10, 2001. On that date, the trial court ordered Husband to "answer pending discovery" by October 22, 2001, and directed that upon Husband's failure to answer, the trial court "will tax additional attorney fees." The trial court also informed the parties that the issue of taxing of attorney fees at the trial of the case-in-chief would be revisited upon Husband's failure to answer. Husband filed answers to Wife's first set of interrogatories and his response to Wife's [first] request for documents on January 14, 2002, which Wife characterized as "grossly incomplete."

On July 23 or 24, 2002, Wife filed and served on Husband her Second Set of Interrogatories and Request for Production of Documents. By letter dated August 29, 2002, counsel for Wife agreed to allow Husband until September 9, 2002, to file his discovery responses. None were provided.

On September 13, 2002, Wife filed her Third Motion to Compel Responses to Interrogatories and Request for Production of Documents and Request for Sanctions. This motion was taken up on September 18, 2002, and the trial court ordered Husband to answer and respond within ten days and that upon his failure to do so, his pleadings would be stricken. The trial court also ordered Husband to pay to Wife's attorney $300.00 "for attorney fees incurred in seeking response to discovery[,]" and provided that Husband's failure to pay such fees prior to the date of trial would result in his pleadings being stricken.

Husband's answers and responses to Wife's second set of interrogatories and request for production were not filed until October 1, 2002. Wife contended that "the information provided was almost an exact duplicate of the inadequate response filed

in January 2002 ... [and] ... [n]o current information was provided."

Wife filed a Motion to Strike Petitioner's Pleadings on October 4, 2002, and a hearing was set for October 15, 2002. On that date, the trial court ordered Husband "to provide current information requested in pending discovery within seven (7) days of this date and further ordered to pay [Wife's attorney] $200 attorney fees within 30 days of this date." The order further provided that upon Husband's failure to comply, "his pleadings shall be stricken." [LF 4] Husband failed to comply, and on November 2, 2002, Husband paid the monetary sanctions imposed on September 18 and October 15.

On October 30, 2002, Wife filed her second motion to strike Husband's pleadings, alleging that discovery responses received from Husband on October 22, 2002 were "again grossly incomplete[.]" Husband filed updated answers on November 5, 2002. A hearing was set for November 7, 2002, at which time the trial court took under advisement Wife's second motion to strike, pending the filing of written suggestions due within seven days of the hearing date. Suggestions were filed by the parties on November 14, 2002.

The trial court sustained Wife's second motion to strike and on November 25, 2002, ordered that Husband's pleadings be stricken. Husband filed his motion to reconsider on December 2, 2002, and oral arguments were heard on that motion on January 27, 2003. The trial court took Husband's motion under advisement, and on January 29, 2003, Husband's motion to reconsider was denied. Husband's pleadings were stricken and at trial, only Wife testified. Husband was allowed to cross-examine Wife.

In reviewing the decision of a trial court to strike pleadings and to deny a party the right to present witnesses, our scope of review is for abuse of discretion. *Crimmins v. Crimmins*, 121 S.W.3d 559, 561 (Mo.App.2003). The exercise of this discretion will not be disturbed upon review unless it is exercised unjustly. *Id.*

■ Pursuant to Rules 61.01(b) and (d), a trial court may order sanctions against a disobedient party for the failure to answer interrogatories and comply with requests for production. *Luster v. Gastineau*, 916 S.W.2d 842, 844 (Mo.App.1996). In instances where a party fails to answer interrogatories, Rule 61.01(b)(1) provides that the trial court may enter an order striking that party's pleadings. When a party fails to produce documents or permit inspection, Rule 61.01(d) authorizes the trial court to enter an order "refusing to allow the disobedient party to support or oppose designated claims or defenses or prohibit the disobedient party from introducing designated matters in evidence[,]" Rule 61.01(d)(1).

Here, the trial court ordered Husband to respond on four separate occasions and ordered attorney fees paid to Wife's attorney for Husband's failure to comply on two of those occasions. Prior to any imposition of sanctions, the trial court made Husband aware of the consequences of his failure to comply with the trial court's ruling, specifically that Husband's "pleadings shall be stricken."

It is within the trial court's sound discretion whether or not to impose such sanctions. *Portell v. Portell*, 643 S.W.2d 18, 20 (Mo.App.1982). Here, the repeated failure of Husband to follow the rules created substantial burdens on Wife and the trial court. We find no merit in Husband's contention that the trial court abused its discretion in striking Husband's pleadings and in not allowing Husband to testify or produce evidence at trial. *See Bell v. Bell*,

987 S.W.2d 395, 401 (Mo.App.1999). Point I is denied.

■ In Point II, Husband assigns error to the trial court's order that Husband pay to Wife the amount of $6,000.00 "as and for [Wife's] portion of the marital funds that [Husband] withdrew during the course of these proceedings from the 401k and stock account."

On April 30, 2002, during the pendency of this action, Husband exercised PepsiCo stock options through his employer, Frito–Lay, and then sold the shares. An account statement reflects that on June 28, 2002, Husband's "reportable proceeds" in the account was $12,159.11. Husband contends that as the cost of exercising these options was $10,011.34, the true value of the options is $2,047.77, and this is the net gain on the exercise of those stock options. The record supports Husband's contentions.

Wife contends that Husband exercised those stock options without Wife's knowledge, and "[h]ad Husband not cashed in this marital asset, that amount [$12,159.11] would have been available to the marital estate for division between the parties by the trial court." However, her statement fails to consider the cost of his purchasing the shares.

We agree with Husband that Wife should have only received half of the net gains from his exercise of the stock options, rather than half of the gross amount. It also appears from the record that this is what the trial court intended. Thus, Wife was entitled to $1,023.89 (one-half of $2,047.77) and not $6,000.

Point II has merit. Pursuant to Rule 84.14, when we believe that the trial court abused its discretion, we may enter the judgment the trial court should have entered, making any necessary corrections or amendments. *Clarke v. Clarke*, 983 S.W.2d 192, 196 (Mo.App.1998). Thus, the portion of the judgment awarding Wife $6,000 "as and for [Wife's] portion of the marital funds that [Husband] withdrew during the course of [the] proceedings from the 401k and stock account[,]" is reversed, and Wife is awarded $1,023.89.

■ Husband's third point challenges the trial court's award of $300.00 per month as maintenance to Wife, as there was no substantial evidence to support such an award. Point IV asserts that the trial court erred in making the maintenance award non-modifiable. In both points, Husband contends that "Wife is employed full-time, has a bachelor's degree in communication, is making at least $28,000.00 per year, and is capable of supporting her needs without assistance from Husband and therefore is not eligible for maintenance under § 452.335 R.S.Mo. (2000)."

Wife asserts that she presented evidence that she cannot meet her reasonable needs without maintenance and produced an income and expense statement reflecting a $1,004.00 per month deficit based on a net monthly income of $1,991.00, less monthly expenses for her and the couple's son estimated at $2,995.00.

A trial court has broad discretion in determining the amount of maintenance awarded in a dissolution action. *Hicks v. Hicks*, 859 S.W.2d 842, 846 (Mo.App.1993). Our review is limited to determining whether the trial court abused that discretion. *Id.* at 846–47. The party challenging the award of maintenance bears the burden of showing an abuse of discretion. *Goodin v. Goodin*, 5 S.W.3d 213, 216 (Mo. App.1999). Evidence is viewed in a light most favorable to the judgment, disregarding contrary evidence and deferring to the trial court's determination even if the evidence could support another conclusion.

*Whitworth v. Whitworth,* 878 S.W.2d 479, 483 (Mo.App.1994).

■ As directed in Section 452.335.1, RSMo 2000, to receive an award for maintenance, Wife must provide evidence that she lacked sufficient property to provide for her reasonable needs and that she is not able to support herself through appropriate employment. Basic to such a determination is the "reasonable needs" of Wife, which must be established "within a reasonable tolerance of proof." *In re Marriage of Murphy,* 71 S.W.3d 202, 205 (Mo. App.2002).

■ Upon a determination that Wife cannot meet her reasonable needs through property or employment and maintenance is warranted, the trial court must next consider factors enumerated in § 452.335.2, RSMo 2000, including "[t]he comparative earning capacity of each spouse." *Hagerman v. Hagerman,* 69 S.W.3d 150, 152 (Mo.App.2002). "[F]ailure to demonstrate that Husband had the means to pay maintenance would warrant reversal." *Id.*

Wife testified that she holds a bachelor of science degree in communication and is employed full time at an insurance agency where her duties are customer service, marketing and sales. Wife stated that her income, including her base pay and monthly bonus pay, averages $2,323.00 per month. She claimed $2,364.00 in expenses and deductions from income for herself, and an additional $631.00 as expenses and deductions from income for the couple's son. Accordingly, she calculates a deficit of $1,004.00 per month.

Evidence relating to Husband's income and expenses was provided by Wife's Exhibits 2 (Husband's December 29, 2001 paycheck statement) and 29 (Husband's income and expense statement he provided to Wife in 2001). Wife's testimony regarding these exhibits is set forth below:

[Counsel for Wife]: Your Honor, I would also like to present Respondent's Exhibit 2, which is the pay stub from [Husband's] check for the pay period ending 12/29/01. That's the latest one we've received as his pay stub.

[Counsel for Husband]: No objection, Your Honor.

COMMISSIONER TINSLEY: It's admitted.

[Counsel for Wife]: It does have the year-to-date totals for the year 2001, Your Honor. Respondent's Exhibit 2.

COMMISSIONER TINSLEY: Thank you. It's admitted.

(AT THIS TIME RESPONDENT'S EXHIBIT 2 WAS RECEIVED INTO EVIDENCE AND MADE A PART OF THIS RECORD.)

BY [Counsel for Wife]:

Q. Now, [Wife], we have received sporadic discovery responses from [Husband]. We are asking for some financial awards from him; therefore, the ability that he has to pay is an issue that we need to prove. Based on that, have we gone through the income and expense statement that he did provide back in 2001 and attached that to our [Wife's] Exhibit 29? And I'm going to hand you that and ask you the income figure reflected here, is that which we have arrived at in using that Form 14, his pay, to the best of our knowledge, and the reserve pay; is that correct?

A. Based off of 2001.

[Counsel for Husband]: Your Honor. Hold it. I would—I would object to this. I—I just don't believe that she has first-hand knowledge of his—of his expenses and his income. I think only [Husband] could testify to that, but perhaps I could go over that by cross-

examination. I just don't—I'm just concerned of the speculative nature of this. I don't know if they have—I don't know how they came up with this.

[Counsel for Wife]: Right. Your Honor, if I might explain. We have attached to our income and expense statement, the income and expense statement that he filled out and was dated ... June 28, '01. We show it as received in our office on 11/01/02. The numbers are virtually identical. I will go through the numbers that we have changed, but if you will have his numbers and ours to compare in how we arrived at the figure.

COMMISSIONER TINSLEY: All right. (Indiscernible.)

[Counsel for Wife]: And I'll go through in testimony how we arrived at the figures we used. We didn't change but about three numbers.

COMMISSIONER TINSLEY: I'll—I'll defer ruling on your objection—

[Counsel for Husband]: Thank you.

COMMISSIONER TINSLEY:—Mr. Shuler, and we'll let Ms. Masters proceed.

BY [Counsel for Wife]:

Q. The income figure reflected on our Exhibit 29 is ... $3,889 as the gross monthly income. As we testified, you testified before, the Form 14, the figure is arrived at based on his pay from Frito–Lay and his Reserve pay; is that correct?

A. As of 2001.

Q. As of 2001. That's the most recent information we have. That number is different than the one he provided in his discovery. He had the sum of $3,200 per month as his gross monthly income, correct?

A. Yeah.

Q. And in the information we have that essentially reflects the reserve pay was not included on his income and expense statement, correct?

A. Correct. And also from the ... 2000 tax return.

Q. That's right. Okay.

I believe the personal property taxes, as listed on the handwritten document that he provided, he had listed as $30 per month. Now, you are aware of the vehicle that he has, correct?

A. Yes.

Q. And you believe that number to be high?

A. Yes.

Q. And we adjusted that down to $15 per month as a more reasonable amount for what the personal property taxes would be for the vehicle that we know to be in his possession; is that correct?

A. Yes.

Q. And, also, on his handwritten income and expense statement which was attached, he had listed as an expense a child support amount—it says $525. That was before the 592 had been ordered by the Court. But he has ... that actually listed in his income and expense statement, and we did not include that in our income and expense statement? Okay?

A. Okay.

Q. Is that correct?

A. Yes.

Q. In how we arrived at these figures? And, also, the church and charitable contributions of $30 were deleted from the income and expense statement we prepared as not a reasonable expense to be taken into consideration for forming the child support and maintenance; is that right?

A. Yes.

Q.  And, based on a comparison of the two, those are the only changes that were made from his handwritten income and expense statement to the typewritten one which we have provided as Respondent's Exhibit 29?

A.  Yes.

Q.  And is it your testimony that you believe these to be his reasonable expenses based on information we were able to receive?

A.  Yes.

Q.  And is it your testimony that these are his reasonable expenses, based on your knowledge of his lifestyle, type of living situation?

A.  Yes.

[Counsel for Wife]:  Your Honor, I would offer Respondent's Exhibit 29.

[Counsel for Husband]:  Same—Same objection, Your Honor.

COMMISSIONER TINSLEY:  I'm going to overrule the objection.  I'll only consider the changes made on Exhibit 29 to the extent that I've weighed the evidence otherwise submitted in support.  When I say "changes," I'm referring to changes made from the income and expense statement that's attached that was prepared by [Husband].

[Counsel for Wife]:  And that was provided for comparison purposes for the Court.

COMMISSIONER TINSLEY:  Thank you.

[Counsel for Wife]:  And, Your Honor, if you would . . . note on the last page of the typewritten income and expense statement, there is an income available after all expenses of $1,723 available to [Husband] with which to pay the amounts that we . . . will be requesting for child support and maintenance.

COMMISSIONER TINSLEY:  Yeah.

In ordering that Husband pay to Wife the amount of $300.00 per month as maintenance, the trial court found that Husband:

is earning a lucrative income, and that [Wife] lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs, and is unable to fully support herself, that there exists substantial disparity between the incomes of [Husband] and [Wife] such that [Wife] will be unable to meet her reasonable needs, unless she receives maintenance from [Husband] and that maintenance should be payable to [Wife] from [Husband].

As to the award of maintenance itself, we find that there was sufficient evidence presented by Wife, as set forth above, for the trial court to award maintenance. Point III is denied.

■ Regarding Husband's challenge in Point IV, that the trial court erred in making the maintenance award non-modifiable, Husband contends that "there was no evidence indicating that [Wife] will never be able to support herself or that there was a need for maintenance to survive her remarriage regardless of future circumstances." Wife concedes that there was no evidence on which to base a non-modifiable maintenance award and requests this Court to enter an order modifying the trial court's judgment and designating the maintenance award as modifiable.

As noted in Point II, under Rule 84.14, we may enter the judgment the trial court should have entered, and make any necessary corrections or adjustments. *Clarke*, 983 S.W.2d at 196. Here, as conceded by Wife, Point IV does have merit and the portion of the judgment in which the trial court incorrectly designated the maintenance award as non-modifiable is reversed and judgment entered designating the maintenance award as modifiable.

In Point V, Husband contends that the trial court erred in awarding to Wife $1,163.00, "as and for retroactive spousal support[,]" in that such an award is a misapplication of § 452.335, RSMo 2000, which provides for prospective awards of maintenance unless a party has requested temporary maintenance during the pendency of the action. Here, Wife filed no such motion.

However, there was evidence that during the pendency of this action, Wife paid mortgage payments totaling $13,558.00, and Husband paid $11,232.00 toward a marital debt the parties owed. It appears from the record that this arrangement was voluntary on the part of both parties. The disparity between the two totals equals $2,326.00, half of which ($1,163.00) Wife requested reimbursement in order to fairly divide the parties' marital debts. The trial court found for Wife on this issue and ordered Husband to pay to Wife $1,163.00 "as and for retroactive spousal support."

"Section 452.335 speaks prospectively, not retrospectively; therefore, a maintenance award ordered in the judgment of dissolution cannot be made retroactive." *Colquitt v. Muhammad,* 86 S.W.3d 144, 148 (Mo.App.2002). Wife concedes the label of "retroactive spousal support" was error, but contends that merely striking the incorrect label would remedy the error. Husband requests reversal on this point, asserting that, as there was no motion for temporary maintenance filed in this action, an award of retroactive maintenance is a misapplication of law.

At trial, Wife submitted a "Summary of Retroactive Spousal Support Requested," Exhibit 28B, wherein she itemized the mortgage payments she paid between June, 2001, and August, 2003, and payments Husband tendered to Consumer Credit Counseling Services between June, 2001 and August, 2003. In her testimony,

Wife requested that payments of the marital debts be divided equally and retroactively to the date of separation.

A trial court's order for payment of marital debt should not be characterized as maintenance where it is simply an aspect of the property division. *Evans v. Evans,* 45 S.W.3d 523, 528 (Mo.App.2001). However, on review, we concern ourselves with the correctness of the result, rather than the route taken. *Travis v. Travis,* 63 S.W.3d 296, 298 (Mo.App.2001). Although labeled "retroactive spousal support," this award to Wife functions as an allocation of debt, not maintenance. *See id.* at 299.

Similar to as in Point IV, we reverse the portion of the trial court's judgment awarding Wife $1,163 as "retroactive spousal support[.]" Pursuant to our authority under Rule 84.14, we enter the judgment the trial court should have entered and remove the award of retroactive spousal support. *See Clarke,* 983 S.W.2d at 196. The $1,163 should be denominated as an allocation of debt. However, this does not change the result, as the award functioned as an allocation of debt. *See Travis,* 63 S.W.3d at 298.

Under Point VI, Husband assigns error to the trial court's upward deviation from the Form 14 presumed child support amount of $517.00 per month to $630.00 per month, as the only evidence submitted to support such a deviation "does not show any unusual medical or educational expenses incurred by the parties' child[,]" and the only basis for the deviation was Wife's testimony that she spends $631.00 per month on the minor child. Husband further contends that "[t]he practical effect of the trial court's upward deviation ... is to require Husband to be responsible for *all* of the child's expenses[.]"

Rule 88.01 creates a rebuttable presumption that the Form 14 amount is the correct amount of child support. *Crews v. Crews,* 949 S.W.2d 659, 669 (Mo. App.1997). The burden is on the party seeking to rebut the Form 14 amount to demonstrate a need for deviating from that amount. *Id.*

"For meaningful appellate review, the trial court is required to determine and find for the record the presumed correct child support pursuant to Rule 88.01, utilizing Civil Procedure Form No. 14." *Neal v. Neal,* 941 S.W.2d 501, 504 (Mo. banc 1997). "This is a mathematical calculation, the mandatory use of which ensures that the child support guidelines will be considered in every case as mandated in section 452.340.7, RSMo 1994, and Rule 88.01." *Id.*

*Neal* refers us to "the detailed prescriptions contained within" *Woolridge v. Woolridge,* 915 S.W.2d 372 (Mo.App.1996), which "thoroughly [explain] to the trial court how to make findings to rebut the presumed correct child support amount calculated pursuant to Form 14 when the trial court determines that the amount is unjust or inappropriate after consideration of all the relevant factors." *Neal,* 941 S.W.2d at 504.

*Woolridge* recommends that in instances where the trial court finds that the presumed correct child support amount is rebutted, the trial court "state the factual basis for rebutting" in its findings in its judgment entries. 915 S.W.2d at 383. "Rebuttal ... occurs when the trial court determines the amount is unjust or inappropriate after consideration of all relevant factors." *Id.* at 378–79.

Here, the trial court found that the presumed child support amount was "unjust or inappropriate in that the amount is insufficient to meet the actual reasonable needs of the minor child." The court ordered Husband to pay child support in the amount of $631.00 per month.

Husband's contention that the upward deviation ordered by the trial court requires him "to be responsible for *all* of the child's expenses" is inaccurate. Wife submitted her Form 14, which reflected an adjusted monthly gross combined income of $6,212.00, and a combined child support cost of $981.00. Wife's presumed child support obligation was shown as $414.00. Husband's support obligation was $567.00, but his presumed child support obligation was calculated as $517.00, following an adjustment under line 11 for "overnight visitation or custody" in the amount of $49.00.[1]

Pursuant to the Form 14 calculations before the trial court, Wife's child support obligation is forty-two percent of the total combined child support cost, and Husband's child support obligation, at $517.00 per month, equals fifty-three percent of the total combined child support cost. The $631.00 child support obligation the trial court ultimately ordered Husband to pay equals sixty-four percent of the total combined child support cost.

At trial, Wife introduced her income and expense statement itemizing anticipated monthly expenditures for her and the couple's son. Wife estimated that the total expenses for the child would be $631.00. The transcript of the trial in this matter references an income and expense statement which Husband had provided to Wife, dated June 28, 2001, and which Wife attached to her income and expense statement and introduced into evidence as Respondent's Exhibit 29. Wife testified that in preparing her Form 14, she based the income and adjustments to income imput-

---

1. No issue is made of the $1.00 deviation.

ed to Husband on the information he had provided in the June, 2001 income and expense statement. Wife also testified that the child's needs would not be met by the child support calculated pursuant to the Form 14 guidelines.

The trial court has broad discretion in setting awards of child support, and this Court will not substitute our judgment for that of the trial court absent a manifest abuse of discretion. *Holmes v. Holmes,* 878 S.W.2d 906, 909 (Mo.App.1994). Unless the evidence substantiating an award of child support is "palpably insufficient" to support it, we will not disturb the trial court's award. *Id.* Here, we find that the evidence in the record supports the upward deviation from the Form 14 calculations. Point VI is denied.

▆▆▆ Point VII is set out below:

The trial court erred in awarding Wife a judgment against Husband for $2,788.58 for medical expenses she incurred as a result of Husband removing her from [his] health insurance because there was no substantial evidence on which to support that judgment in that Husband's policy of health insurance was not introduced into evidence, no credit was given for the $250.00 deductible Wife admitted existed in Husband's policy, and there was no other evidence that these expenses would have been covered had she been included under Husband's policy of health insurance at the time these services were performed.

Wife testified that Husband removed her from his health insurance plan on January 1, 2002, although she had no knowledge of his action until the following month. Wife stated that she asked Husband to re-enroll her through his plan, but Husband did not do so. Although Wife had maintained insurance coverage through her employer, when she was required to undergo surgery during their separation, a portion of the expense was not paid by her insurance. Wife claimed an outstanding balance of $2,788.58, and requested that Husband be ordered to pay this amount because he had removed her from his policy which would have paid the amount outstanding, with the exception of a $250.00 deductible. Additionally, Wife contends that Husband's removal of her from his health insurance plan was a violation of the Greene County Interim Domestic Order entered when Husband filed for dissolution.

Husband contends in this point that there was no evidence that the expense not paid by Wife's insurance policy would have been paid by his insurance company. Wife responds to Husband's contention, alleging that Husband's health insurance policy was one of the items requested in discovery that Husband failed to provide.

Husband cites no authority for his assignment of error in this point, however, Wife conceded in her testimony that Husband's policy required a $250.00 deductible. Here again, pursuant to our authority under Rule 84.14, we modify the trial court's judgment by deducting $250.00, representing the amount of the policy deductible, from the $2,788.58 in medical expenses awarded to Wife. The judgment is modified to reflect an award of $2,538.58 to Wife for medical expenses incurred as a result of Husband's removal of Wife from his health insurance policy.

▆▆▆ The remainder of Husband's contentions in this point are denied for failure to cite authority for those alleged errors or explain the absence of authority. Rule 84.04(d) provides that an appellant must "cite appropriate and available precedent if he [or she] expects to prevail." *Shiyr v. Pinckney,* 896 S.W.2d 69, 71 (Mo. App.1995). When no authority is available, appellant should provide an explana-

tion for the absence of citations. *Id.* Failure to do either preserves nothing for review. *Patterson v. Waterman,* 96 S.W.3d 177, 179 (Mo.App.2003).

In his eighth point, Husband argues that the trial court erred and abused its discretion in awarding Wife $12,600 in attorney fees. According to Husband, the award was not based on substantial evidence because there was no itemized statement of the services provided to Wife by her attorney admitted into evidence; Wife's own testimony was that she made 42% of the joint income and therefore, she is capable of paying her own attorney fees; the trial only lasted three hours with only Wife's testimony and few assets; and Husband had already paid a monetary sanction for his alleged inadequate discovery responses.

Husband is correct that, in general, the parties in a dissolution proceeding are expected to pay for their own attorney fees. *Myers v. Myers,* 47 S.W.3d 403, 410 (Mo.App.2001). However, § 452.355, RSMo 2000, does allow the trial court to award attorney fees "after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action[.]" § 452.355.1, RSMo 2000. Further, under Rule 61.01, the trial court may award attorney fees if a party fails to produce documents. Rule 61.01(d)(4).

The trial court has broad discretion in awarding attorney fees and such an award is only reviewable for an abuse of discretion. *Copeland v. Copeland,* 116 S.W.3d 726, 729 (Mo.App.2003). A trial court abuses its discretion when an award is clearly against the logic of the circumstances and so arbitrary and unreasonable that it shocks one's sense of justice. *Id.* We will only disturb the trial court's deci-

sion to award attorney fees if the amount awarded was so arbitrary or unreasonable as to indicate indifference and a lack of proper consideration by the trial court. *Kester v. Kester,* 108 S.W.3d 213, 225 (Mo. App.2003). The trial court is an expert on the necessity, reasonableness, and value of attorney services. *Copeland,* 116 S.W.3d at 729.

Although a spouse's inability to pay is not a requirement for awarding attorney fees, one spouse's greater ability to pay is sufficient to support an award of attorney fees. *Woolsey v. Woolsey,* 904 S.W.2d 95, 101 (Mo.App.1995). Here, the trial court found that husband was "capable of earning a living and is earning a lucrative income," and "that there exists [a] substantial disparity between the incomes of [Husband] and [Wife][.]"

Thus, the award of attorney fees in this case was supported. The reasons listed by Husband in support of this point are either not in line with the findings of the trial court or are simply not supported by legal authority, which is a violation of Rule 84.04 and preserves nothing for our review. *See Clark v. Clark,* 858 S.W.2d 837, 838 (Mo. App.1993). Point VIII is denied.

For his ninth and final point, Husband states:

> The trial court erred in requiring Husband to be responsible for all of the transportation involved in exercising his contact time with his son because said ruling was an abuse of the trial court's discretion and not based on substantial evidence in that:
>
> a. Both parties are employed and earning a substantial wage;
>
> b. That Husband is paying a substantial amount to Wife in child support, thus making it an undue financial burden on Husband to be responsible for all transportation of

the minor child during his court-ordered contact periods; and

c. The distance between the residence of Wife in Springfield and Husband in Mount Vernon, Missouri is not so great as to place an undue burden on Wife to participate in the transportation of the child.

The judgment provides that in exercising his visitation rights, Husband is responsible for transportation to and from Wife's residence. Wife testified that Mount Vernon, where Husband chose to move following their separation, is twenty to twenty-five miles from her home. Wife also testified that her vehicle, a 1992 Thunderbird, was "well on its last leg."

 The trial court is accorded broad discretion in apportioning expenses of visitation in its custody and visitation determinations. *In re S.E.P.*, 35 S.W.3d 862, 870 (Mo.App.2001). Such decisions are reviewed for a manifest abuse of that discretion. *Id.* Unless the provision challenged by the parent is not in the child's best interest, this Court will not overturn the trial court's determination in such matters. *Lavalle v. Lavalle*, 11 S.W.3d 640, 646 (Mo.App.1999). Under these circumstances, the trial court's order that Husband be responsible for the child's transportation during exercise of his visitation does not constitute a manifest abuse of discretion. Point IX is denied.

The judgment is reversed in part in the manner indicated in the discussion of Points II, IV, V, and VII. Pursuant to our authority under Rule 84.14, we modify the judgment by awarding Wife $1,023.89 rather than $6,000 "as and for [Wife's] portion of the marital funds that [Husband] withdrew during the course of [the] proceedings from the 401k and stock account[,]" designating the maintenance award as modifiable, denominating the $1,163 as allocation of debt rather than "retroactive spousal support," and reducing the award to Wife for medical expenses incurred to $2,538.58. In all other respects, the trial court's judgment is affirmed. The cause is remanded to the trial court for it to modify its judgment in accordance with this opinion.

BARNEY, P.J., and GARRISON, J., concur.